**MICHAEL S. LAHR**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**901 Front Street, Suite 1100**
**Helena, MT 59626**
**Phone:  (406) 457-5120**
**FAX:  (406) 457-5130**
**Email: Michael.Lahr@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 06-79-BLG-SEH** |
| **Plaintiff/Respondent,** | **CV 13-92-BLG-SEH** |
| **vs.** | **UNITED STATES RESPONSE TO DEFENDANT'S PETITION UNDER 28 U.S.C. § 2255** |
| **LASHAWN JERMAINE JOHNSON,** | |
| **Defendant/Movant.** | |

# TABLE OF CONTENTS

BACKGROUND .................................................................................... 1

ARGUMENT ....................................................................................... 4

    I.  Johnson is procedurally barred from asserting claims that he did not raise on direct appeal ......................................... 4

   II.  To the extent Johnson's claims are not procedurally barred, they are without merit. ................................................. 5

      A.  Johnson's claim that he was denied the right to adequately prepare for trial is without merit ...................... 7

      B.  Alleged inadequacies pertaining to undercover purchases of drugs would go to weight of evidence rather than admissibility and small quantities involved would not have impacted the outcome. ................. 8

      C.  Johnson's alleged lack of "chain of custody" evidence claim is without merit. ........................................ 10

      D.  Johnson's was not prejudiced by any of his trial counsel's alleged errors or omissions. ................................ 12

      E.  Appellate counsel's decision not to raise ineffective assistance of counsel claims against trial counsel on direct appeal was proper and did not prejudice Johnson .................................................................. 19

      F.  Johnson is barred from re-litigating *Apprendi* issues already decided on direct appeal ............................ 20

      G.  Defendant's sixth claim that 21 U.S.C. §§ 841 and 846  violate the Tenth Amendment is frivolous and must be dismissed. ............................................................. 23

      H.  If the jury briefly and inadvertently saw Johnson while shackled outside of the courtroom, no Constitutional violation occurred ....................................... 24

i

I. Johnson's claim of ineffective assistance of counsel at the time of his arraignment is frivolous and should be dismissed. ........................................................... 26

J. Johnson's claims of ineffective assistance against his counsel at re-sentencing are barred because they are based on issues already decided on direct appeal. .................................................................. 27

K. Counsel acted properly and effectively in regard to Johnson's motion to reduce sentence based upon the Fair Sentencing Act. .................................................... 31

L. Johnson does not carry his burden to show a *Brady* violation. .............................................................. 33

III. Should The Court Find The Need For An Evidentiary Hearing, The Government Reserves Its Right To Conduct Discovery. ................................................... 38

CERTIFICATE OF SERVICE ............................................. 40

CERTIFICATE OF COMPLIANCE ................................... 41

# TABLE OF AUTHORITIES

## Cases

*Apprendi v. New Jersey,*
   530 U.S. 466 (2000) ................................................................20

*Barrett v. United States,*
   965 F.2d 1184 (1st Cir. 1992) ...........................................35

*Brady v. Maryland,*
   373 U.S. 83 (1963) ...............................................................1

*Chacon v. Wood,*
   36 F.3d 1459 (9th Cir. 1994) .............................................15

*Dalli v. United States,*
   491 F.2d 758 (2d Cir. 1974) ..............................................34

*Diaz v. United States,*
   930 F.2d 832 (11th Cir. 1991) .....................................17, 18

*Doganiere v. United States,*
   914 F.2d 165 (9th Cir. 1990) .............................................14

*Eggleston v. United States,*
   798 F.2d 374, 376 (9th Cir. 1986) .......................................8

*Engelen v. United States,*
   68 F.3d 238 (8th Cir. 1995) .........................................17, 18

*Hamilton v. Vasquez,*
   17 F.3d 1149 (9th Cir. 1994) .............................................12

*Hayden v. United States,*
   814 F.2d 888 (2d Cir. 1987) ..............................................35

*Hill v. Lockhart,*
474 U.S. 52 (1985) ................................................................ 17

*Iaea v. Sunn,*
800 F.2d 861 (9th Cir. 1986) ................................................. 14

*Jones v. Gomez,*
66 F.3d 199 (9th Cir. 1999) ..................................................... 6

*Lord v. Wood,*
184 F.3d 1083 (9th Cir. 1999) .................................................. 6

*Machibroda v. United States,*
368 U.S. 487 (1962) .............................................................. 34

*Morris v. Woodford,*
229 F.3d 775 (9th Cir. 2000) ................................................. 15

*Murray v. Carrier,*
477 U.S. 478 (1986) ................................................................ 4

*Paters v. United States,*
159 F.3d 1043 (7th Cir. 1998) ............................................... 17

*Pham v. United States,*
317 F.3d 178 (2nd Cir. 2003) ................................................ 17

*Rhoden v. Rowland,*
172 F.3d 633 (9th Cir. 1999) ................................................. 25

*Riggs v. Fairman,*
399 F.3d 1179 (9th Cir. 2005) ............................................... 15

*Shah v. United States,*
878 F.2d 1156 (9th Cir. 1989) ............................................... 35

*Strickland v. Washington,*
   466 U.S. 668 (1984) ...................................................................... 1, 5, 6

*United States v. Alvarez,*
   86 F.3d 901 (9th Cir. 1996) .............................................................. 37

*United States v. Currie,*
   589 F.2d 993 (9th Cir. 1979) ............................................................ 12

*United States v. Fry,*
   322 F.3d 1198 (9th Cir. 2003) ............................................................ 5

*United States v. Garcia,*
   909 F.2d 1346 (9th Cir. 1990) .......................................................... 14

*United States v. Hollis,*
   490 F.3d 1149 (9th Cir. 2007) .......................................................... 21

*United States v. Molina,*
   934 F.2d 1440 (9th Cir. 1991) .......................................................... 38

*United States v. Olano,*
   507 U.S. 723 (1993) ........................................................................ 4

*United States v. Patterson,*
   140 F.3d 767 (8th Cir. 1998) ............................................................ 24

*United States v. Price,*
   566 F.3d 900 (9th Cir. 2009) ...................................................... 33, 36

*United States v. Rachels,*
   820 F.2d 325 (9th Cir.1987) ............................................................ 20

*United States v. Rivera Sanchez,*
   222 F.3d 1057 (9th Cir. 2000) .......................................................... 17

*United States v. Rodriguez-Razo,*
    962 F.2d 1418 (9th Cir. 1992) ............................................................... 14

*United States v. Schaflander,*
    742 F.2d 714 (9th Cir. 1984) ................................................................... 6

*United States v. Scrivner,*
    189 F.3d 825 (9th Cir. 1999) ................................................................. 20

*United States v. Solorio,*
    669 F.3d 943 (9th Cir. 2012 ................................................................. 10

*United States v. Turner,*
    881 F.2d 684 (9th Cir. 1989) ................................................................. 14

*United States v. Walker,*
    142 F.3d 103 (2d Cir. 1998) ................................................................. 24

*Watts v. United States,*
    841 F.2d 275 (9th Cir. 1988) ................................................................. 38

*Wildman v. Johnson,*
    261 F.3d 832 (9th Cir. 2001) ................................................................... 6

*Wilson v. McCarthy,*
    770 F.2d 1482 (9th Cir. 1985) ............................................................... 26

*Withrow v. Williams,*
    507 U.S. 680 (1993) ............................................................................. 20

## **Statutes**

18 U.S.C. § 3553(a) ................................................................................ 31

18 U.S.C. § 3582(c) .................................................................................. 3

18 U.S.C. § 3582(c)(2) ........................................................................ 4, 29

18 U.S.C. § 924(c)..................................................................................2, 14, 27

21 U.S.C. § 841........................................................................................23

21 U.S.C. § 841(b)(1)(A)(iii) ......................................................................23

**<u>Other Authorities</u>**

U.S.S.G. § 1B1.10 ....................................................................................30

U.S.S.G. § 2D1.1 ......................................................................................29

U.S.S.G. § 2D1.1(c) ..................................................................................29

U.S.S.G. §2D1.1(b)(1) ..............................................................................27

The United States, by and through its counsel of record, Michael
S. Lahr, Assistant United States Attorney for the District of Montana
hereby provides its Answer to Lashawn Jermaine Johnson's Petition
under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  With
his Petition, Johnson raises ten issues pertaining to ineffective
assistance of counsel and one allegation of a violation of *Brady v.
Maryland,* 373 U.S. 83 (1963).  The petition should be denied because
Johnson has failed to carry his burden of showing ineffective assistance
of counsel on any of his claims under the standard set forth in
*Strickland v. Washington*, 466 U.S. 668 (1984).  Additionally, he has
failed to sufficiently allege a cognizable *Brady* claim.

## BACKGROUND

Lashawn Johnson was arrested in August of 2005 with his
girlfriend Heather Shutz at her residence.  About 400 grams of crack
cocaine was found at the home along with a loaded .45 caliber handgun.
On June 26, 2006, Lashawn Johnson was charged in an eight-count
indictment with possessing and distributing crack cocaine in Billings,
Montana, and possessing a firearm in furtherance of a drug trafficking
crime.  Following a three-day trial, a jury found Johnson guilty of

Conspiracy (Count I), Possession with Intent to Distribute Cocaine Base (Counts, II, III, and VII), and possession of a firearm in violation of § 924(c) (Count VIII).  The jury found him not guilty of Distribution as charged in Counts IV, V and VI.  The jury also found, through a special verdict form, that Johnson possessed with the intent to distribute 50 grams or more of cocaine base.  He was sentenced to 360 months on the drug counts along with 60 consecutive months on the gun count, as required by 18 U.S.C. § 924(c), for a total sentence of 420 months.  Johnson appealed his sentence and conviction.

The Ninth Circuit Court of Appeals affirmed the 924(c) conviction, vacated the 420-month sentence, and remanded for re-sentencing based on its holding that the two-level sentencing enhancement for possession of a firearm imposed by the district court was not appropriate because Johnson was already punished for the gun as a result of his 924(c) conviction.

At re-sentencing on July 27, 2010, Johnson received 293 months on the drug counts along with 60 months consecutive on the gun count, for a total of 353 months.  Johnson's reduced sentence was due in part to changes in the Sentencing Guidelines that reduced the 100:1

sentencing ratio for cocaine powder to crack cocaine to a ratio of about 33:1.  Johnson challenged the reasonableness of the sentence on appeal, and the district court was affirmed in July of 2011.

In November 2011, the Sentencing Commission published Amendment 750 of the Sentencing Guidelines which amended the Drug Quantity Table pursuant to the Fair Sentencing Act of 2010.  The retroactive application of this Amendment reduced Johnson's base offense level another two levels.  Based on Johnson's motion for reduction of sentence under 18 U.S.C. § 3582(c), the district court reduced his sentence to 235 months for the drug counts and 60 months for the gun count, for a total of 293 months.  Johnson appealed the sentence and the district court was affirmed.

Johnson timely filed his Petition raising eleven issues.  In summary, his claims include 1) his assertion that he was denied reasonable access to discovery; 2) assertions regarding the admissibility of certain drug evidence at trial; 3) assertions regarding the chain of custody of drug evidence; 4) ineffective assistance of counsel at trial; 5) ineffective assistance of counsel on appeal; 6) assertions that federal drug laws are in violation of the Tenth Amendment of the Constitution;

3

7) that he was seen by a juror during trial while in shackles; 8) ineffective assistance of counsel at arraignment; 9) ineffective assistance of counsel at resentencing; 10) ineffective assistance of counsel as to the Fair Sentencing Act; and 11) a *Brady* error alleging the withholding of evidence by the prosecution.

## ARGUMENT

### I.     Johnson is procedurally barred from asserting claims that he did not raise on direct appeal.

As a "general rule . . . claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003).  The rule applies to claims that were not raised and adequately preserved, regardless of whether the failure to raise the claim was intentional or inadvertent.  *See United States v. Olano*, 507 U.S. 723, 733 (1993); *Murray v. Carrier*, 477, U.S. 478, 480-92 (1986).  However, there is an exception for ineffective assistance of counsel claims.  *Massaro*, 538 U.S. at 1696.

Johnson asserts that all of his arguments were not raised on appeal because counsel was ineffective.  His first three claims regarding his inability to prepare for trial, alleged inadequacies of drug evidence,

4

and his claim that drug evidence should be declared inadmissible due to a lack of chain of custody evidence, along with his sixth claim, which is a state sovereignty claim alleging that federal drug laws are unconstitutional, and his seventh claim alleging that a juror saw him in shackles, are all framed in terms of ineffective assistance in his opening § 2255 questionnaire form wherein he is required to state the reasons why the issues were not raised on appeal.

It is evident that these claims were only couched as ineffective assistance claims to escape the procedural bar against claims forfeited on direct appeal.  Therefore, these claims should be dismissed.

## II.    To the extent Johnson's claims are not procedurally barred, they are without merit.

A defendant claiming ineffective assistance of counsel must demonstrate: (1) counsel's actions were outside the wide scope of professionally competent assistance; and (2) the defendant was prejudiced by reason of counsel's actions.  *Strickland v. Washington,* 466 U.S. 668, 687-690 (1984); *United States v. Fry,* 322 F.3d 1198, 1200 (9th Cir. 2003).  A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *Strickland,*

466 U.S. at 697.  In deciding whether an attorney's performance was ineffective, a court must consider the totality of the circumstances. *Strickland,* 466 U.S. at 690.

In determining whether an attorney's work falls below the level of reasonable representation, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 692.  To establish prejudice, a "[d]efendant must demonstrate only that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, with a reasonable probability defined as a probability sufficient to undermine confidence in the outcome." *Lord v. Wood,* 184 F.3d 1083, 1085 (9th Cir. 1999).

Ultimately, a defendant bears the burden of proof under *Strickland.  Wildman v. Johnson,* 261 F.3d 832, 838 (9th Cir. 2001). Conclusory allegations not supported by specifics do not warrant relief. *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1999).  In order to succeed on an ineffective assistance of counsel claim, a defendant must make a sufficient factual showing to substantiate the claim.  *United States v. Schaflander,* 742 F.2d 714, 721 (9th Cir. 1984).

6

## A.   Johnson's claim that he was denied the right to adequately prepare for trial is without merit.

As noted above, though Johnson's first claim is held out as an ineffective assistance claim, he is essentially contending that the government and the district court used extraordinary measures to prevent him from adequately preparing for trial.  Johnson alleges that his pre-trial detention away from trial counsel, together with the large amount of discovery in the case, made it impossible for him to adequately review the discovery and assist his counsel.

Though Johnson goes on at length to describe the purported limitations and explain why he believes they were unreasonable, he fails to offer anything but conclusory allegations when it comes to any actual prejudice he may have suffered.  Moreover, the defendant's allegations do not show that defense counsel could not review the discovery.  Far from offering anything concrete, Johnson states only that he was impeded in his ability to assist with his defense and that his counsel was thereby prevented from engaging in effective cross-examination.  But, to the contrary, the record shows that Mr. Sands was well informed of the facts and circumstances of the case.  *See, e.g.,*

*Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986).  Because

he fails to even allege that the outcome of his case would have been

different had he been located closer to counsel or had more opportunity

to review discovery, his claim must fail.

### B.   Alleged inadequacies pertaining to undercover purchases of drugs would go to weight of evidence rather than admissibility and small quantities involved would not have impacted the outcome.

Johnson's second issue pertains to the "standard operating

procedures" utilized by law enforcement agencies when doing

undercover drug buys.  These alleged standard operating procedures

are not, however, based upon any law enforcement manual or gleaned

from any legal research.  As Johnson acknowledges, the procedures that

he claims govern the form and practice of undercover buys are founded

upon his study of the case files of other inmates.

To the extent these undercover protocols exist, the most Johnson

can establish is that his counsel could have asked more and better

questions during cross examination.  There is certainly no rule of

evidence that would preclude the admission of evidence pertaining to

such undercover drug buys, even where a defendant may be able to

argue that formal procedures were not followed.  Much like the chain of

custody issue discussed in Johnson's third claim, any failure to follow

such standard operating procedures would logically go to the weight of

the evidence rather than its admissibility.  A defendant would certainly

be able to argue that an agency's failure to follow proper procedures

raises legitimate questions about a particular undercover transaction,

much like Johnson does here in his discussions about the three

undercover buys during his trial.

However, even if Johnson is correct that questions could have

been raised about the undercover transactions during his trial, the

amounts of cocaine involved in those undercover buys was very small in

relation to the 1.5 kilograms ultimately established by the evidence.

Importantly, to apply the ten years to life enhanced penalties in this

case, the government only needed to prove that Johnson was involved in

transactions amounting to 50 grams or more of crack cocaine.  In this

case, well over 300 grams of crack cocaine was seized from the house

that Heather Schutz and Johnson were living in at the time of their

arrest.  Therefore, even if Johnson's counsel had asked more questions

at trial about the undercover buys, the outcome would not have

changed.  Johnson would still have been convicted based on all of the

drug evidence that had nothing to do with undercover buys.

### C.   Johnson's alleged lack of "chain of custody" evidence claim is without merit.

Johnson claims that chain of custody evidence for the narcotic

seizures was lacking.  He cannot carry his heavy burden to show that

this supposed lack of chain of custody caused him any prejudice.   As an

initial matter he does not state with any particularity the harm that

was caused by this alleged lack of chain of custody.  Likewise, he does

not show that the outcome would have been different had he been

afforded the opportunity to challenge the evidence for a lack of chain of

custody.  Indeed, he cannot meet his burden because the record

demonstrates he actually did challenge the evidence based upon a lack

of chain of custody.

A defect in the chain of custody goes to the weight to be afforded to

the evidence not to its admissibility.  *United States v. Solorio*, 669 F.3d

943, 954 (9th Cir. 2012).   Accordingly, based upon the discretion of the

trial court, evidence can be admitted and then defense counsel can

cross-examine the witness as to any supposed defect in the chain.  That

is exactly what happened here.  The United States first called Scott

Patrick Hoopes a forensic chemist with the Drug Enforcement

Administration.  Trial Tr. 530.  Mr. Hoopes began testifying about the

drugs which were submitted to him for testing.  *Id.* at 531-37.  Defense

counsel then asked to voir dire Mr. Hoopes.  *Id.* at 537.  Defense counsel

specifically cross-examined the witness about chain of custody.  *Id.* at

538-39.  Defense counsel then objected on the ground that there was no

foundation and no chain of custody.  *Id.* at 539.  The court correctly

overruled the objection.  Such issues about the weight of this evidence

are placed before the jury to decide.  As such, the defendant cannot now

support his claim on collateral attack that he did not have the

opportunity to cross-examine about the chain of custody.  As the record

shows—with or without any chain of custody documentation[1]—the

defendant did in fact cross-examine about the chain of custody.

Likewise, there is nothing in counsel's cross-examination which would

indicate incompetency.   In fact, his questions on direct and cross-

examination would indicate that he was, at the very least, an average

---

[1] The record indicates that these documents were not only received by the defendant but were actually admitted into evidence. Trial Tr. At 538, Lines 10-17.

11

trial lawyer.  *See, e.g.*, *United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979).

Johnson cannot meet his burden to show that there was any error let alone any prejudice or evidence sufficient to support a claim at an evidentiary hearing.  His claim should be denied.

>    D.    Johnson's was not prejudiced by any of his trial counsel's alleged errors or omissions.

Johnson next alleges that his trial counsel, Jack Sands, failed to adequately investigate his case.  He also claims that his counsel failed to inform Johnson about his potential sentence which he contends impacted his decision on whether to plead guilty.  Neither of these claims, however, can survive a *Strickland* analysis.

Johnson first suggests that, due to the large amount of discovery in the case, Sands should have hired an investigator.  However, as held in *Hamilton v. Vasquez*, 17 F.3d 1149, 1157 (9th Cir. 1994), claims of failure to investigate must show what information would be obtained through the investigation and, assuming the evidence is admissible, how it would have produced a different result.  Here, Johnson merely speculates, without any support, that an investigator might have

turned up impeachment evidence to use against the witnesses who testified against Johnson at trial.  Such a vague and speculative assertion, however, is wholly inadequate to support an ineffective assistance claim.  Again, conclusory allegations unsupported by specifics do not warrant relief.  Ultimately, Johnson provides no basis for concluding that, but for his trial counsel's decision not to hire an investigator, the outcome of trial would have been different.

According to Johnson, his counsel was also ineffective because he provided him with bad information about the potential length of his sentence.  Johnson alleges that Mr. Sands informed him that the maximum sentence he would face, even if he went to trial, was twenty years.   Of course, this assertion seems questionable based on the simple fact that the indictment clearly stated that Johnson was subject to a maximum sentence of life imprisonment.  Additionally, the indictment also stated that the gun count subjected Johnson to a mandatory five year sentence to be served consecutively to any other term of imprisonment.  Nevertheless, Johnson insists that Sands continued to tell him that he was facing a maximum sentence of twenty years right up until the time of sentencing.  However, even if it is

assumed that Sands made such statements, Johnson's claim must still fail under *Strickland.*

The Ninth Circuit Court of Appeals has found on several occasions that an attorney's incorrect prediction of the sentence a defendant may receive does not give rise to a claim of ineffective assistance of counsel. *United States v. Turner,* 881 F.2d 684, 687 (9th Cir. 1989), *overruled on other grounds, United States v. Rodriguez-Razo,* 962 F.2d 1418 (9th Cir. 1992); *United States v. Michlen,* 34 F.3d 896, 899 (9th Cir. 1994); *United States v. Garcia,* 909 F.2d 1346, 1348 (9th Cir. 1990). However, the Court has found counsel may be ineffective where he grossly mischaracterizes the outcome of a case. *Doganiere v. United States,* 914 F.2d 165, 168 (9th Cir. 1990).

There are only a limited number of cases where the Ninth Circuit Court of Appeals has found a defense attorney grossly misstated the likely outcome of a case to an extent that it constituted ineffective assistance of counsel. In one case, an attorney predicted that the defendant would receive a probationary sentence, but he was instead sentenced to life imprisonment. *Iaea v. Sunn,* 800 F.2d 861, 863-64 (9th Cir. 1986), *superseded by statute on other grounds as stated in Morris v.*

14

*Woodford,* 229 F.3d 775, 779 (9th Cir. 2000).  In a second case, and

attorney advised a defendant he could receive less than a five year

sentence, but the defendant was instead sentenced to a mandatory

statutory penalty of 25 years to life imprisonment provided for

recidivists ("three strike') offenders.  *Riggs v. Fairman,* 399 F.3d 1179,

1181 (9th Cir. 2005).  In another case, the Circuit Court found a defense

attorney indirectly made a gross mischaracterization of the likely

sentence when an interpreter told the defendant he would serve only

three months in jail if he pled guilty, but he was actually sentenced to

ten years imprisonment.  *Chacon v. Wood,* 36 F.3d 1459, 1464 (9th Cir.

1994).

Though Johnson was originally sentenced to a total of 420 months

in prison, his sentence has been reduced over time through appeals and

a motion to reduce sentence to a total of 293 months, which is less than

25 years.  Again, Johnson claims to have expected a sentence of no more

than twenty years if he went to trial.  The five-year disparity between

the sentence Johnson thought he would receive and what he actually

received is considerably less than the disparities at issue in either *Iaea*

or *Riggs.*  Even if Mr. Sands miscalculated the statutory maximum

penalty that would ultimately be applied and failed to anticipate precisely what sentencing enhancements might apply, he did not grossly mischaracterize the outcome of the case. Thus, Mr. Sand's performance cannot be considered to be deficient.

Even if Mr. Sand's conduct was considered deficient in this regard, *Strickland* requires the defendant to demonstrate actual prejudice. In this instance, the only possible basis for prejudice alluded to by Johnson is the fact that, in hindsight, the three-level reduction for acceptance of responsibility would have been beneficial and resulted in a shorter sentence had he pleaded guilty.

To prevail on this issue, Johnson would have to at least assert that a plea offer was actually made in this case. However, he neither claims that an offer was made nor provides any information as to its terms.

Even if a plea agreement was offered to Johnson, he cannot succeed on his claim of ineffective assistance without establishing that, but for his counsel's alleged failures, he would have pled guilty. In the context of claims regarding guilty pleas, the defendant must show that his plea would have been different but for his counsel's errors. *Hill v.*

16

*Lockhart*, 474 U.S. 52, 59 (1985); *see also Turner,* 281 F.3d at 879 (defendant must show that he would have pleaded guilty and would not have insisted on going to trial.)  More specifically, a defendant must assert that he would have accepted the plea offer and have some objective evidence other than his own assertions to support that finding. *Pham v. United States*, 317 F.3d 178, 183 (2nd Cir. 2003); *Paters v. United States*, 159 F.3d 1043, 1046 (7th Cir. 1998) (petition must establish through objective evidence that there is a reasonable probability that he would have accepted the alleged proposed plea agreement); *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995) (defendant not entitled to hearing on his ineffective assistance claim where he presented no objective evidence that he would have admitted his guilt before trial); *Diaz v. United States*,  930 F.2d 832, 835 (11th Cir. 1991) (upholding the district court's denial of ineffective assistance claim because petitioner cited no evidence to indicate that he would have accepted the plea offer); *see also United States v. Rivera Sanchez*, 222 F.3d 1057, 1060 (9th Cir. 2000) (upholding the denial of ineffective assistance claim where, despite the defendant's assertions, the record

17

did not support the fact that the defendant would have accepted the government's plea offer).

Clearly, showing prejudice under *Strickland's* second prong requires more than a mere conclusory statement, made with the aid of hindsight, that the defendant would have accepted a plea offer. *Diaz*, 930 F.2d at 835. Instead, the movant must present some credible, non-conclusory and non-self-serving statements as evidence showing that he would have pled guilty to a plea offer. *Engelen,* 68 F.3d at 24. Here, Johnson does not even take the minimal step of unequivocally stating in his memorandum that he would have pleaded guilty in this case had he been informed differently by his counsel. Again, Johnson merely points out that he ended up with a greater sentence than he thought and that the three-level reduction would have been very helpful to him. Because Johnson offers no evidence that, but for his counsel's errors or omissions, he would have actually pleaded guilty, he cannot show any prejudice and his claim of ineffective assistance must fail under *Strickland's* second prong.

18

### E.   Appellate counsel's decision not to raise ineffective assistance of counsel claims against trial counsel on direct appeal was proper and did not prejudice Johnson.

In his fifth claim, Johnson alleges ineffective assistance of counsel by David Ness on his first appeal.  Johnson claims that Ness and the Federal Defenders had a conflict of interest based on the fact that they had previously represented Heather Schutz, Johnson's former girlfriend and co-conspirator who testified against him at trial.  Additionally, Johnson asserts that Ness failed to raise trial issues on appeal so as not to embarrass trial counsel, Jack Sands.  Though Johnson devotes much space in his memorandum hypothesizing about why Ness would want to undermine his appeal effort, he fails to show that Ness was in any way ineffective or that he was prejudiced by Ness's actions.

First, even if Johnson's claim that Ness told him he would not raise ineffective assistance of counsel claims on appeal based on his friendship with Jack Sands was determined to be credible, he cannot satisfy the second prong of the *Strickland* test because there is no prejudice.  It is the general rule that ineffective assistance of counsel claims should not be raised on direct appeal but are, instead, properly

raised through § 2255 motions.  *United States v. Rachels*, 820 F.2d 325, 328 (9th Cir.1987) (observing that the proper avenue for defendant to raise an ineffective assistance claim "would appear to be a collateral attack of his sentence which would then provide some record upon which this Court could base its review").  Therefore, Ness was not ineffective, and Johnson was in no way prejudiced.  He has now had ample opportunity to raise his ineffective assistance claims against Sands through this § 2255 motion.

### F.    Johnson is barred from re-litigating *Apprendi* issues already decided on direct appeal.

When a federal prisoner raises a claim that has been decided on direct review, he cannot later attempt to re-litigate the claim in a Section 2255 proceeding.  *See Withrow v. Williams*, 507 U.S. 680, 720-721 (1993); *United States v. Scrivner*, 189 F.3d 825 (9th Cir. 1999).  A review of the appellate record plainly shows that Ness argued under *Apprendi v. New Jersey,* 530 U.S. 466 (2000), that Johnson could not be subjected to the enhanced crack cocaine penalties because the government had failed to allege in the indictment or prove beyond a reasonable doubt that the cocaine involved in the case was actually crack cocaine.  Because this *Apprendi* was raised on appeal, and

20

because Johnson lost on that issue, he is barred from re-litigating it here.

In this case, the government's indictment alleged that "cocaine base" was involved in the drug crimes charged, but it did not specifically allege that Johnson had possessed or distributed "crack cocaine." Further, the jury was given a special verdict form which required findings regarding the amount of cocaine base involved, but not a determination as to whether the cocaine base was crack.

Following sentencing in Johnson's case, The Ninth Circuit issued its opinion in *United States v. Hollis,* 490 F.3d 1149 (9th Cir. 2007), stating that, in order for the "cocaine base" statutory maximum to be applied, the indictment must allege "crack cocaine" and the government must prove that the cocaine base involved was crack.  Based on *Apprendi* and *Hollis,* Ness argued on appeal that the government had failed to support Johnson's convictions for conspiracy and possession with intent to distribute "cocaine base" because the indictment did not allege that he had distributed crack and the government had not proven beyond a reasonable doubt that his offenses involved crack.

21

This issue was critical because it had a direct impact on the statutory maximum sentence that could be applied.  By alleging 50 grams of "cocaine base" in the indictment, Johnson was subject to a sentence of ten years to life imprisonment.  If he had only been found guilty of possessing or distributing "cocaine powder," the maximum sentence would have been twenty years.  The District Court was able to sentence Johnson to 360 months on each of the counts involving cocaine base because that term of imprisonment was below the statutory maximum of life imprisonment.  If, however, the government had lost the *Apprendi / Hollis* issue on appeal, it would have only been able to use the lower, cocaine powder penalties and Johnson could not have been sentenced to anything more than twenty years on a given count.

In its unpublished opinion, the Ninth Circuit Court of Appeals noted that the government had conceded error in its failure to specifically allege "crack" in Johnson's indictment rather than "cocaine base."  The Court, however, determined that there "was overwhelming, uncontradicted evidence that the substance in question was crack." (Opinion at 3).  Based on the overwhelming evidence that the cocaine base at issue was crack, the Court held that any error was harmless.  In

22

a footnote, the Court stated that "[e]ven a small shipment, such as the four ounces of crack that Johnson personally delivered to Heather Shutz, is sufficient to meet the fifty gram quantity required to trigger the minimum sentence provision of 21 U.S.C. § 841(b)(1)(A)(iii)." (*Id.*, Footnote 1).

With this § 2255 Petition, Johnson continues to argue that *Apprendi* issues were not properly raised or argued.  The Ninth Circuit Court of Appeals, however, has specifically ruled that the enhanced penalties for crack cocaine under 21 U.S.C. § 841 were triggered in Johnson's case based on the evidence presented at trial.  In other words, the Ninth Circuit has already determined that both the statutory maximum of life imprisonment, as well as the corresponding ten-year statutory minimum, would be properly applied as enhanced penalties in this case.  Because the *Apprendi* issue in this case has already been litigated on direct appeal, Johnson cannot re-litigate it again through this § 2255 Petition.

### G.    Defendant's sixth claim that 21 U.S.C. §§ 841 and 846  violate the Tenth Amendment is frivolous and must be dismissed.

23

In his next claim, Johnson contends that the federal drug laws under which he was convicted were passed in violation of the Tenth Amendment of the United States Constitution.  Based on this assertion, Johnson argues that his convictions must be reversed and his case remanded to the Sovereign State of Montana for prosecution.  The Controlled Substances Act, however, was constitutionally enacted by Congress within its power under the Commerce Clause. *See, e.g. United States v. Walker,* 142 F.3d 103 (2d Cir. 1998); *United States v. Patterson,* 140 F.3d 767 (8th Cir. 1998).  Johnson's claim is frivolous and should be dismissed.

### H.   If the jury briefly and inadvertently saw Johnson while shackled outside of the courtroom, no Constitutional violation occurred.

Johnson claims that during his trial, a number of jurors likely saw him for a brief moment in jail clothes and shackles in the hallway of the courthouse as he was preparing to be transported from the courthouse to the Yellowstone County Detention Facility.  Based on Johnson's description of the event, it is evident that the jurors' view of him was inadvertent as well as brief.

24

Johnson provides no reason for the fact that this issue was not raised until now.  Obviously, if the incident occurred, Johnson knew about it and could have informed his trial counsel or his appeal lawyer. The failure to raise the issue during trial or on appeal certainly cannot be laid at the feet of any of Johnson's counsel if they were never made aware of the incident.  Clearly, the most opportune time for this to have been addressed would have been during trial.

Johnson contends that this unreported incident constituted a significant violation of his rights but bases that contention on caselaw pertaining to defendants who are shackled in the courtroom during trial.  The courts have distinguished those types of cases from ones where jurors only inadvertently see a defendant in shackles or detention garb.  For example, in the very case cited by Johnson in his memorandum, *Rhoden v. Rowland,* 172 F.3d 633 (9th Cir. 1999), the court specifically noted that a "jury's brief or inadvertent glimpse of a defendant in physical restraints outside of the courtroom has not warranted habeas relief." *Id.* at 636.  It has also been held that where the jury's "view of a defendant or witness in shackles is brief, as in this case, or inadvertent, the defendant must make an affirmative showing

25

of prejudice." *Wilson v. McCarthy,* 770 F.2d 1482, 1485-86 (9th Cir. 1985).

Here, Johnson has focused all of his attention on the alleged wrongdoing of the prosecutor who quickly pushed petitioner back out of the sight of the jurors.  However, as the two cases quoted above indicate, Johnson must make an affirmative showing that he was in fact prejudiced by the jury's brief view of him in shackles in order to gain any habeas relief.  Because Johnson makes no such showing that he was prejudiced, his claim must fail.

I.   **Johnson's claim of ineffective assistance of counsel at the time of his arraignment is frivolous and should be dismissed.**

Johnson's eighth claim is also frivolous and should be dismissed out of hand.  In this claim, Johnson discusses the fact that he was represented at his arraignment by David Merchant of the Federal Defenders.  At this same time, Mr. Merchant was also representing Heather Schutz who was a co-conspirator of Johnson and would ultimately testify against him.  Because Johnson was required to enter a plea, he argues that his arraignment was a critical point in the proceedings necessitating representation by an attorney without

conflicts.  He even goes so far as to suggest that this constituted plea negotiations.

Whatever arguments Johnson seeks to put forward regarding Merchant's limited representation of him during his arraignment, the only relevant fact is that Merchant advised him to plead not guilty. Such advice cannot, under any theory, be considered to be ineffective assistance nor can Johnson possibly argue that he was prejudiced in any way by virtue of his pleading not guilty based on Mr. Merchant's advice.  Obviously Johnson agreed with the non-guilty plea, and persisted in that same plea when he obtained new counsel and and put the government to its full burden of proof at trial.  His claim therefore fails.

### J.    Johnson's claims of ineffective assistance against his counsel at re-sentencing are barred because they are based on issues already decided on direct appeal.

On Johnson's first appeal, the Ninth Circuit determined that the two-level enhancement imposed by the district court for possession of a firearm under U.S.S.G. §2D1.1(b)(1) was error because Johnson had also been convicted of a violation of 18 U.S.C. § 924(c) for possession of a

27

firearm for use in a drug trafficking crime.  It therefore remanded the case for resentencing. (Opinion at 5).

Johnson was resentenced on January 27, 2010.  This time, his base offense level was lowered to 36 due to changes in the Sentencing Guidelines that reduced the 100:1 sentencing ratio for cocaine powder to crack cocaine to a ratio of about 33:1.  His original Guideline range had been 360 months to life.  At his resentencing, his Guideline range was 235 to 293 months.  He was ultimately resentenced to 293 months on the drug counts, with the mandatory 60 consecutive months for the gun count for a total sentence of 353 months.

Johnson contends that Vernon Woodward, his counsel during the re-sentencing and on the appeal that followed, was ineffective because he failed to raise any *Apprendi* issues.  As previously discussed, Johnson is precluded from raising his *Apprendi* claim with this § 2255 Petition because it has already been litigated on direct appeal.

Additionally, Johnson contends that Woodward failed to argue that Johnson's post-sentencing rehabilitation efforts were a justification for a reduced sentence.  This issue, however, has also been litigated on direct appeal and cannot be re-litigated here.

28

To fully explain how this issue came to be litigated on direct appeal, subsequent proceedings in Johnson's case must be reviewed. After the re-sentencing and during the pendency of Johnson's second direct appeal, which was handled by Mr. Woodward, Congress enacted the Fair Sentencing Act of 2010 which further reduced the crack cocaine to powder cocaine ratio to 18:1. As a result of the Fair Sentencing Act, the Sentencing Commission issued an emergency amendment on October 18, 2010, to U.S.S.G. § 2D1.1 that reflected the new 18:1 sentencing ratio. Because the amendment was not initially made retroactive, it could not be applied on appeal.

In November 2011, The Sentencing Commission published Amendment 750 to the Sentencing Guidelines which amended the Drug Quantity Table of U.S.S.G. § 2D1.1(c). The Commission specifically made Amendment 750 retroactively applicable. Based on the Amendment, Johnson was allowed to file a motion under 18 U.S.C. § 3582(c)(2) for a reduction of sentence. In his motion, Johnson asked the district court for a low-end sentence based upon his post-sentencing rehabilitation. In support of this request, Johnson attached a record of classes he had taken in prison.

29

The district court ordered the Federal Defenders of Montana to represent Johnson in determining his eligibility for the sentence reduction. It directed the Defenders to incorporate Johnson's pro se motion by reference and ordered U.S. Probation to prepare an Addendum to Johnson's PSR recalculating his Guideline range in light of Amendment 750. Importantly, the district court required the Addendum to include "all pertinent factors related to a potential section 3582(c) reduction, including defendant's post-sentencing conduct, for the Court's consideration, as outlined by U.S.S.G. § 1B1.10."

After the Addendum was completed, the district court granted Johnson's motion for sentence reduction by reducing his sentence to 295 months. The form order granting the motion stated that the court had considered Johnson's motion, USSG §1B1.10, and the § 3553(a) sentencing factors. The court explained that the new sentence represented 235 months for the drug counts and 60 months for the gun count. Johnson appealed.

Michael Donahoe represented Johnson on this appeal and argued the post-sentencing rehabilitation issue. He contended that the district court abused its discretion by not adequately stating its reasons for

30

reducing Johnson's sentence when a low-end sentence based on his post-sentencing rehabilitation had been requested.

In an unpublished memorandum, the Ninth Circuit stated that "[t]he district court considered the motion for a reduced sentence, *which included Johnson's post-conviction rehabilitation arguments,* as well as the relevant Guidelines policy statement and the 18 U.S.C. § 3553(a) sentencing factors."  Ninth Circuit Memorandum, September 24, 2102, at 2. (Emphasis added).  The Court went on to conclude that the district court's explanation was sufficient and affirmed the sentence.  *Id.*

Based on this record, the issue of Johnson's post-sentencing rehabilitation was considered by the district court before reducing Johnson's sentence and then raised by Johnson on direct appeal. Because the issue has been litigated on direct appeal, Johnson cannot raise the claim again with his § 2255 petition.

### K.    Counsel acted properly and effectively in regard to Johnson's motion to reduce sentence based upon the Fair Sentencing Act.

With his tenth claim, Johnson makes various assertions about Michael Donahoe's representation of him over the course of the proceedings pertaining to the motion to reduce sentence under §

31

3582(c).  To the extent Johnson alleges ineffective assistance of counsel against Donahoe, his claim must fail.  As noted above, Donahoe assisted Johnson with the motion to reduce sentence pursuant to the district court's order.  The district court granted that motion and reduced Johnson's total sentence by five years (353 months to 293 months).  On appeal, Donahoe made the only legitimate argument possible.  Despite his efforts, the sentence was affirmed.  Though Johnson may have wanted a greater reduction from the district court than he received, he cannot show that his disappointment was caused by the ineffective assistance of counsel.  Because Johnson has failed to establish any error or omission by his counsel and does not allege any harm attributable to counsel, this claim must fail.

Further, Johnson seems to contend that he is still sentenced under the 100:1 crack to powder ratio.  As shown above, that is simply not true.  Johnson's motion to reduce sentence was filed based upon the Fair Sentencing Act of 2010 and Amendment 750 to the Sentencing Guidelines, and his current sentence is based upon the 18:1 ratio implemented thereunder.

**L.   Johnson does not carry his burden to show a *Brady* violation.**

To succeed on a *Brady* violation claim, the defendant mush show that the government failed to disclose relevant information which was in its possession (either the prosecutor or its agents). *United States v. Price*, 566 F.3d 900, 908 (9th Cir. 2009).  The defendant bears the initial burden of producing some evidence to support his *Brady* claim.  *Id.* at 910.  In this case, Johnson has not satisfied his burden—he has provided no evidence whatsoever.  Johnson highlights the uncertainty of his own claim when he states, "[i]t is <u>more likely</u> that these informants continued to snitch while even incarcerated for not other purpose than person gain."  Df. Mot. 37 (emphasis added).  And, he further highlights his uncertainty and lack of evidence when stating: "[w]hether the government **had knowledge** of these incidents **or not**…they maintained a duty to fully investigate the case…."  *Id.* (emphasis added).   He has put forth no evidence of a *Brady* violation and acknowledges his complete lack of proof in stating that it is entirely possible that the government knew nothing about any *Brady* material which was not disclosed.  This is not sufficient proof to justify an evidentiary hearing let alone support a claim for relief.

33

In fact, the record directly contradicts his claim.  And, even if he had carried his burden, he nevertheless cannot demonstrate prejudice.

First, Johnson points to some case where Tyrone Jackson cooperated with the government in a prior drug case which was out of this district.  He states, "Surely, the government had knowledge of this matter."  Df. Mot. at 37 (emphasis added).  But this speculation is not proof sufficient to carry his burden.  He does not even cite to the alleged actual case.  Indeed, he claims that the case was out of this district.  Johnson does no more that speculate about what the government may or may not have known.  And, certainly points to no concrete and admissible evidence which could be introduced at an evidentiary hearing sufficient to support his claim.

Indeed, "[t]he petitioner must set forth specific facts which he is in a position to establish by competent evidence." *Dalli v. United States*, 491 F.2d 758, 760-61 (2d Cir. 1974) (citing *Machibroda v. United States*, 368 U.S. 487, 495-96 (1962), and recognizing that a district judge is well within his discretion to deny a petition when the supporting affidavit relies on mere generalities or hearsay statements).  "Mere generalities or hearsay statements will not normally entitle the applicant to a

34

hearing, since such hearsay would be inadmissible at the hearing itself." *Hayden v. United States*, 814 F.2d 888, 892 (2d Cir. 1987). Likewise, "[m]ere conclusory allegations do not warrant an evidentiary hearing." *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989). "[T]he threshold issue is whether, if the evidence should be offered at a [evidentiary] hearing, it would be <u>admissible</u> proof entitling the petitioner to relief." *Barrett v. United States,* 965 F.2d 1184, 1195 (1st Cir. 1992) (emphasis in original).

Johnson further claims that Ashley Grimm had an arrest record which the government failed to disclose.  But he provides absolutely no evidence that the government had this arrest record in its possession. And he certainly does not support his bald conclusory allegations with any evidence that would be admissible at an evidentiary hearing. Likewise, he says nothing to address whether anything in the alleged arrest record was actually *Brady* material—*i.e.*, would anything in the alleged arrest record actually be admissible under the Rules of Evidence to properly impeach the witness.

Likewise, Johnson further claims that the government withheld *Brady* information about Heather Schultz.  He specifically claims that

she was working with Las Vegas Metropolitan Police in 2000.  Df. Mot. at 37.  He claims that she would give them guns in exchange they would overlook her illegal prostitution.  *Id.*  These mere assertions however do not carry his burden.  He does nothing to show that the AUSA or the investigators in Montana had any such *Brady* information in its possession about Ms. Schultz conduct in Nevada with local authorities and that they failed to disclose it.

Moreover, the record in this case shows that the defense knew at least something about Ms. Schutz prostitution activities and even cross-examined her to some degree about it.  Trial Tr. 370-71.  More importantly, during a sidebar, defense counsel acknowledged that there was "stuff all over her discovery" about her being a prostitute.  Trial Tr. 398.  These two insistences directly undercut Johnson's claim that the government did not produce discovery related to Schultz' prostitution.

Further, even if Johnson did have enough evidence to show that the government did not provide *Brady* material about Schultz, he cannot show that the failure to disclose was prejudicial.  To succeed on his *Brady* claim he must show there would have been a reasonable probability of a different result.  *Price*, 566 F.3d at 911.  He cannot show

36

a reasonable probability of a different result here because numerous items of impeachment were already raised at trial to attack Schultz's credibility.  The jury nevertheless chose to believe her testimony.

As already noted, defense cross-examined Schultz about her prostitution activities and on direct examination testimony was elicited from her about Sweet & Discreet Escort Service which she ran.  Trial Tr. 357-58; *see also id.* at 402.   Indeed, when the *Brady* material concerns impeachment evidence against a government witness, *Brady* error is avoided so long as the defendant can present the evidence to the jury and can fully cross-examine the witness.  *See United States v. Alvarez*, 86 F.3d 901, 905 (9th Cir. 1996).  That happened here.

During her testimony, it was further highlighted that Schultz had cooperated with the government and had signed a plea agreement.  *Id.* 362-63.  She even testified that she was not initially entirely truthful with the agents who interviewed her.  She even testified about being charged with a gun and that she was in possession of drugs.  *Id.* at 379, 388-90.  In short, there was already ample evidence introduced at trial to give the jury reason not to believe Schultz.  Her credibility was already placed squarely before the jury.  Thus, Johnson cannot show

that there is a reasonable probability that any additional impeachment evidence would have changed the outcome.  His claim therefore fails.

### III.   Should The Court Find The Need For An Evidentiary Hearing, The Government Reserves Its Right To Conduct Discovery.

When deciding a § 2255 petition, "the district judge first [should] decide whether the claim has merit, and second, if it does, to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted."  *United States v. Molina*, 934 F.2d 1440, 1446 (9th Cir. 1991).  Here, Johnson has failed to show on the existing record that his claims have merit and the Court should deny the petition without a hearing.  Should the Court find that further proceedings are necessary to address Johnson's  claims, the United States respectfully requests an opportunity to develop the record through discovery.  *See Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988) (recognizing that "[c]ase law and the Rules Governing Habeas Corpus Cases recognize

that courts may expand the record for considering section 2255 motions

with discovery and documentary evidence.").

DATED this 13th day of November, 2013.

MICHAEL W. COTTER
United States Attorney

*/s/ Michael S. Lahr*
Assistant U.S. Attorney
Attorney for Plaintiff/Respondent

39

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 13, 2013, a copy of the foregoing was served on the following persons by the following means:

<u>1</u>       CM/ECF
_____     Hand Delivery
<u>2</u>\_\_\_\_\_  Mail
_____     Overnight Delivery Service
_____     Fax
_____     E-mail

1.    United States Clerk of Court

2.    Lashawn Johnson, Petitioner
      FCI Mendota
      P.O. Box 9
      Mendota, CA 93640

*/s/ Michael S. Lahr*
Assistant U.S. Attorney
Attorney for Plaintiff/Respondent

## CERTIFICATE OF COMPLIANCE

I certify that this Answer is in compliance with Local Rule

7.1(d)(2) (as amended) and CR 12.1(e).  The brief's line spacing is double

spaced, with a 14 point font size and contains 7,454 words, excluding

tables and certificates.

DATED this 13th day of November 2013

*/s/ Michael S. Lahr*
Assistant U.S. Attorney
Attorney for Plaintiff/Respondent