

**MAY 2 2 2014**

Clerk, U.S. District Court
District Of Montana
Helena

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

UNITED STATES OF AMERICA,

Plaintiff/Respondent,

vs.

LASHAWN JERMAINE JOHNSON,

Defendant/Movant.

Cause No. CR 06-79-BLG-SEH

ORDER

On July 15, 2013, Defendant/Movant Lashawn Jermaine Johnson moved to

vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Johnson is a federal

prisoner proceeding pro se.

United States District Judge Jack D. Shanstrom presided over trial. On

September 3, 2013, he ordered the United States to file an Answer to Johnson's

motion. Order (Doc. 170). It complied on November 12, 2013. Answer (Doc.

183).[1] Johnson replied on December 5, 2013. Reply (Doc. 184). Judge Shanstrom

has retired and the matter reassigned. Order (Doc. 171).

---

[1] Because, in its preparation, this document was not numbered continuously, the
numbering at the bottom of each page differs from the CM-ECF numbering at the top of the
page. Page numbers cited herein refer to the page number at the bottom of the page, not the CM-
ECF numbers.

1

## I. Background

### A. Charges

On June 26, 2006, Johnson was indicted on multiple charges: one count of

conspiracy to possess with intent to distribute more than 50 grams of cocaine base,

a violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count 1); one count of possessing

with intent to distribute more than 50 grams of cocaine base between November or

December 2002 through August 26, 2005, but excluding the dates identified in

Counts 3-7 (Count 2); one count of possessing with intent to distribute 399.50

grams of cocaine base on or about August 26, 2005 (Count 3); one count of

distributing 1.5 grams of cocaine base on or about April 12, 2005 (Count 4); one

count of distributing 0.23 grams of cocaine base on or about April 14, 2005 (Count

5); one count of distributing 6.3 grams of cocaine base on or about April 22, 2005

(Count 6); one count of possessing with intent to distribute 1.2 grams of cocaine

base on or about November 10, 2004 (Count 7); one count of possessing a Glock

.45-caliber pistol in furtherance of a drug trafficking crime, a violation of 18

U.S.C. § 924(c)(1)(A) (Count 8); and a forfeiture count (Count 9). Indictment

(Doc. 1-1) at 1-5.

Conviction for any of Counts 1, 2, or 3, mandated a minimum penalty of ten

years in prison and a maximum of life. 21 U.S.C. § 841(b)(1)(A)(iii) (Nov. 1,

2002). If convicted on Count 6, Johnson faced a minimum of five years in prison

2

and a maximum of 40. *Id.* § 841(b)(1)(B)(iii).[2] If convicted on any of Counts 4, 5,

or 7, he faced a maximum of 20 years in prison. *Id.* § 841(b)(1)(C). Count 8, upon

conviction, required a five-year prison term, consecutive to any other sentence

imposed.

### B. Pretrial Proceedings

A warrant was issued. Johnson was arrested in Las Vegas, Nevada, on June

28, 2006. Warrant Return (Doc. 3). He was released from custody and directed to

appear in Montana as ordered. Rule 40 Documents (Doc. 2).

Johnson appeared and was arraigned on July 13, 2006. Assistant Federal

Defender David Merchant represented him for purposes of that proceeding only.

Attorney J. Mayo Ashley was appointed to represent him in future proceedings.

He was taken into custody, and a detention hearing was set for July 18, 2006.

Minutes (Doc. 4); Order (Doc. 6). Retained counsel Jack Sands appeared on

Johnson's behalf later on July 18, 2006. Notice (Doc. 11). A detention hearing

was held on July 19, 2006, and Johnson was detained pending trial. Minutes (Doc.

13); Order (Doc. 14).

On October 19, 2006, Johnson moved to transfer custody location from Wolf

Point to Billings to facilitate consultation with counsel. The motion was denied,

but the Marshals Service was ordered to transport Johnson to Billings ten days

---

[2] The caption of the Indictment erroneously included Count 6 in the penalty range
applicable to Counts 4, 5, and 7.

before trial, then scheduled for November 20, 2006. Order (Doc. 20).

### C. Conviction and Judgment

Trial commenced on November 27, 2006. On November 29, 2006, the jury found Johnson guilty on Counts 1, 2, 3, 7, and 8.  He was acquitted on Counts 4, 5, and 6. Verdict (Doc. 50).

On March 21, 2007, a sentencing hearing was held. Minutes (Doc. 73). Johnson was held responsible for more than 1.5 kilograms of crack. The base offense level was 38. He received two-point enhancements for possession of a weapon and for his supervisory role in the offense.  The total offense level was 42. Presentence Report ¶¶ 92-100. Johnson's criminal history category was I. *Id.* ¶ 103. The advisory guideline range was 360 months to life in prison. U.S.S.G. ch. 5 Part A (Sentencing Table).  The statutory maximum on Count 7 was 20 years. 21 U.S.C. § 841(b)(1)(C).  He was sentenced to 360 months on Counts 1, 2, and 3; 240 months, concurrent, on Count 7; and 60 months, consecutive, on Count 8, for a total of 420 months in prison, to be followed by a five-year term of supervised release. Judgment (Doc. 74) at 2-3.

### D. First Re-Sentencing and Appeal

New counsel, Assistant Federal Defender David Ness, appealed the conviction on Count 8 and the sentence on the drug counts. On March 16, 2009, the Ninth Circuit Court of Appeals affirmed the convicted, but remanded for re-

4

sentencing on grounds the two-point enhancement for possession of a weapon was precluded by Johnson's conviction on Count 8. Mem. at 3, 5, *United States v. Johnson*, No. 07-30163 (9th Cir. Mar. 16, 2009) (Doc. 104). A petition for writ of *certiorari* was filed. It was denied on October 5, 2009. Clerk Letter (Doc. 107).

On November 25, 2009, Ness moved to withdraw due to "a conflict at the District Court level." The motion was granted and Vernon Woodward was appointed as replacement counsel. Mot. (Doc. 109); Order (Doc. 110).

On January 27, 2010, a re-sentencing hearing was held. In the time intervening between the original sentencing and re-sentencing, the Sentencing Commission reduced the applicable base offense level from 38 to 36. *See* U.S.S.G. Amendment 706 (eff. Nov. 1, 2007). A two-point enhancement was again added for Johnson's supervisory role. No enhancement for possession of a firearm was added. The total offense level was 38. Presentence Report (Re-Sentencing) ¶¶ 92-100. The advisory guideline range was 235-293 months. He was sentenced to 293 months on Counts 1, 2, and 3; 240 months, concurrent, on Count 7; and five years, consecutive, on Count 8, for a total of 353 months, to be followed by a five-year term of supervised release. Am. Judgment (Doc. 118) at 2-3.

Johnson again appealed the sentence. The Court of Appeals affirmed. Mem. at 2, *United States v. Johnson*, No. 10-30029 (9th Cir. July 19, 2011) (Doc. 133).

### E. Motion Under 18 U.S.C. § 3582(c)(2) and Appeal

On November 1, 2011, Johnson filed a motion to modify sentence under 18

U.S.C. § 3582(c)(2). Pro Se Mot. (Doc. 135). He relied on the United States

Sentencing Commission's adoption of Amendment 750, which further reduced the

base offense level from 36 to 34. Senior Federal Defender Michael Donahoe was

appointed to represent him. On February 13, 2012, Johnson's sentence was again

decreased from a total of 353 months to a total of 295 months, that is, 235 months

on the drug counts and a consecutive 60-month sentence under 18 U.S.C. § 924(c).

Order (Doc. 141). Johnson appealed the sentence for a third time. It was affirmed.

Mem. at 2, *United States v. Johnson*, No. 12-30071 (9th Cir. Sept. 24, 2012) (Doc.

157).

### F. Filing of § 2255 Motion

Johnson filed the § 2255 motion on July 15, 2013. 28 U.S.C. § 2255(f)(1);

*Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012). The United States

conceded it to be timely. Answer at 3.

## II. Johnson's Claims and Analysis

### A. Claims Not Alleging Ineffective Assistance of Counsel

The United States correctly points out that some of Johnson's claims are

procedurally defaulted because they could have been, but were not, raised on direct

appeal. *E.g.*, *Bousley v. United States*, 523 U.S. 614, 621-22 (1998). The United

6

States also acknowledges, many of Johnson's claims consist of, or are accompanied by, allegations of ineffective assistance of trial or appellate counsel and that an ineffective assistance claim cannot be defaulted by failing to raise it on direct appeal. *Massaro v. United States*, 538 U.S. 500, 502-04 (2003). Such a claim, if meritorious, can excuse the default of a related claim. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel is the only basis for cause that Johnson offers. Consequently, all claims alleging ineffective assistance of counsel are addressed in Part B, below.[3]

Johnson does not assert ineffective assistance for three of his claims. *E.g.*, Mot. § 2255 (Doc. 166) at 6-7 ¶¶ F, G; *id.* at 9 ¶ K. These claims could be defaulted. However, each relies on a case or fact that might also mean the claim was not available on direct appeal. Default does not apply if a claim was not available on appeal. Each claim will be addressed on the mertis.

### 1. Tenth Amendment

Johnson claims Congress's enactment of 21 U.S.C. §§ 841 and 846 violated the Tenth Amendment because "[t]here is no valid cause for the federal government to impose it's [sic] own version" of drug laws "upon the citizens of the

---

[3] The United States asserts that "it is evident that these claims were couched as ineffective assistance claims to escape the procedural bar against claims forfeited on direct appeal. Therefore, these claims should be dismissed." Answer (Doc. 183) at 5. "Couching" is not a defense to a § 2255 motion and does not support dismissal as a sanction.

State of Montana." Br. in Supp. at 25-28. The record does not disclose that

Johnson is a citizen of the State of Montana. *See* Presentence Report ¶¶ 110-115.

At any rate, the Supreme Court "long ago rejected the suggestion that Congress

invades areas reserved to the States by the Tenth Amendment simply because it

exercises its authority under the Commerce Clause in a manner that displaces the

States' exercise of their police powers." *Hodel v. Virginia Surface Mining and*

*Reclamation Ass'n, Inc.*, 452 U.S. 264, 291 (1981). The federal drug laws,

including 21 U.S.C. §§ 841 and 846, have been upheld against challenges that

Congress exceeded its authority under the Commerce Clause in enacting them. *See,*

*e.g., Gonzales v. Raich*, 545 U.S. 1, 9 (2005); *United States v. Tisor*, 96 F.3d 370,

375 (9th Cir. 1996); *United States v. Kim*, 94 F.3d 1247, 1250 (9th Cir. 1996).

This claim is denied.

## 2. Shackling

Johnson contends the United States violated his right to due process when

jurors were permitted to see him in jail clothes and shackles. He avers that he was

being escorted from the building at the end of a trial day when prosecutor Jim

Seykora, realizing there were jurors were in the hallway, "abruptly pushed"

Johnson backward to prevent him from being seen. Nonetheless, Johnson states, he

"caught eye contact with one of the female jurors." Br. in Supp. at 28-29.

The jury already knew Johnson was in custody. Counsel emphasized in his

8

opening statement that Johnson voluntarily made the trip from Las Vegas to

Montana to stand trial, only to be arrested, incarcerated, and detained 300 miles

away from his attorney. *See* 1 Trial Tr. at 101:19-102:22. The hallway incident,

therefore, did not surprise any juror. It may even have elicited sympathy from the

jury. *See Estelle v. Williams*, 425 U.S. 501, 508 (1976). Finally, jurors were

instructed not to consider anything they saw or heard outside the courtroom, 3

Trial Tr. at 604:11-13. Jurors are presumed to follow instructions, *Weeks v.*

*Angelone*, 528 U.S. 225, 234 (2000).

Johnson also claims the prosecutor's actions violated *Brady v. Maryland*,

373 U.S. 83, 87 (1963), because Seykora allegedly did not inform defense counsel

of the incident. A juror's seeing a defendant in shackles is neither exculpatory nor

useful for impeachment of a witness. The incident was simply not *Brady* material.

This claim is denied.

### 3. *Giglio* Violation

Johnson asserts the prosecution failed to disclose that three witnesses

cooperated with authorities on previous occasions to obtain personal advantages. A

witness's track record of testifying against others to benefit himself could be useful

to defense counsel in impeaching government witnesses. *Giglio v. United States*,

405 U.S. 150, 153-55 (1972); *United States v. Schoneberg*, 396 F.3d 1036, 1041-

42 (9th Cir. 2005). Contrary to Johnson's suggestion, however, the United States

is not required to investigate the history of each of its witnesses in order to discover whether any witness has a history of assisting authorities in exchange for favorable treatment. It nevertheless is required to investigate the records of its own agencies to the extent they are involved in the investigation of the defendant, *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989), and, if the prosecution knows of and has access to additional information, it must obtain and produce it, *United States v. Santiago*, 46 F.3d 885, 893-94 (9th Cir. 1995).[4]

Johnson alleges, in a verified pleading, Mot. § 2255 at 9, 10 Decl. ¶ A; Br. in Supp. at 1, 37, that the United States did not disclose the history of three witnesses, Tyrone Jackson, Ashley Grimm, and Heather Schutz, providing some form of assistance to law enforcement or prosecuting authorities in exchange for a break in charging or sentencing. He avers that Tyrone Jackson received a benefit in a previous case in exchange for information; that Grimm had an arrest record and

---

[4] Johnson described Jackson's previous conviction as "out of this district," Br. in Supp. at 37, meaning "from" or "originating in" this district, *see* Reply at 6, as one might say Johnson has a federal felony drug conviction "out of" the District of Montana. The phrase "out of" was reasonably misunderstood by the United States to mean "outside" the District of Montana. *See* Answer at 34. But even if Johnson had meant outside this District, the prosecutor was still required to disclose *Brady* and *Giglio* material if he knew about it and had access to it. *See, e.g.*, *United States v. Kojayan*, 8 F.3d 1315, 1318-22 (9th Cir. 1993). It is worth noting that the defense in *Kojayan* had nothing but a hunch to rely on when it claimed the government unconstitutionally withheld *Brady/Giglio* material. The existence of the suppressed material was not disclosed until an appellate judge at oral argument asked the prosecutor a yes-or-no question he had to answer. *Id.* at 1316-18, 1320. The obligation to disclose the material long predated that question. The threshold for further inquiry was certainly met in *United States v. Price*, 566 F.3d 900, 908, 910 (9th Cir. 2009), *cited in* Answer at 33. That does not mean the standard for future cases is that the defendant must obtain the *Brady* material by other means and present it to the court, as fortuitously occurred in that case.

was in some undefined way involved in an ongoing robbery investigation; and that Schutz provided firearms to the Las Vegas police and in exchange "they would overlook her illegal prostitution."

Johnson is not required to produce evidence with his motion. He must, however, "state facts showing a real possibility of constitutional error." *Nicolas*, 98 F.3d at 1109. Even on that point, the Court is obliged to liberally construe pleadings submitted by a *pro se* prisoner. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). By this standard, Johnson provides enough information to require the United States to check its files to determine whether it complied with its *Brady* and *Giglio* obligations as to witnesses Jackson, Grimm, and Schutz. It has not represented that it has done so.

The United States must expand the record under Rule 7(a) of the Rules Governing § 2255 Proceedings. It must determine (1) whether any information regarding prior cooperation or benefit received by any of the three witnesses was or is in its possession or was in the knowledge and access of the prosecutor; (2) when this information, if any, came into its possession; and (3) when it was produced, if at all. Johnson will have an opportunity to respond. The Court reserves ruling, pending review of the parties' responses, on the issue of whether this claim is procedurally defaulted.

11

## B. Ineffective Assistance Claims

Claims of ineffective assistance are governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Coleman*, 501 U.S. at 752-54. Johnson must allege facts sufficient to support an inference (1) that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

### 1. Access to Discovery

Johnson contends, first, that he was denied effective access to the discovery produced by the prosecution. The United States, under D. Mont. L.R. CR 16.4, designated at least some of the discovery as "sensitive material," which counsel was prohibited from leaving in Johnson's possession. L.R. CR 16.4(b)(1)(D). He states, on three separate occasions, about 1000 pages of discovery were left with him overnight, and that he was compelled to review the entire amount and provide feedback to counsel the next day. He contends that the time allotted him was unreasonable. In addition, he asserts it was unreasonable to detain him at a facility 300 miles away from counsel and that any claim by the prosecution that it imposed

12

restrictions on discovery to protect its informants was "a fraud." He contends that his rights to due process, to confront the witnesses against him, to assist in his own defense, and to the effective assistance of counsel were impaired. Br. in Supp. (Doc. 166-1) at 4-8, 16-18.

Counsel raised the above matters with Judge Shanstrom, who directed the Marshals Service to move Johnson to Billings ten days before trial. Johnson, in fact, was moved 17 days before trial as trial was later reset. Moreover, he entirely overlooks the fact that the United States is required to produce only limited information in discovery, *see* Fed. R. Crim. P. 16(a)(1). It was not required to produce witness statements until immediately *after* the witness testified, 18 U.S.C. § 3500(b). In this District, discovery is routinely provided well before trial by the prosecution, thus allowing defense counsel to anticipate the prosecution's proof well before the time at which the law requires disclosures. Although defense counsel have scant legal purchase in federal law to enforce local practice, counsel must observe the local rule, which authorizes the withholding of sensitive material from the defendant's possession.

There is no reason to conclude it was unreasonable for trial counsel to fail to do more than he did. In addition, the facts in the record at the time of Johnson's first appeal did not demonstrate prejudice. Appellate counsel could not have been ineffective for failing to raise this issue on appeal.

13

Further, Johnson has the burden of alleging facts in his § 2255 motion

sufficient to support an inference that he was prejudiced. Here, he does not claim

he was surprised at trial by any particular information that he could have rebutted

or impeached had he known of it in advance. He simply claims he personally did

not have an adequate opportunity to search through the discovery for false or

inconsistent statements. *See* Br. in Supp. at 8; Reply (Doc. 184) at 2.  Neither

prong of the *Strickland* test is met. This claim is denied.

### 2. Undercover Buys

Johnson argues the testimony at trial showed that putative "standard

operating procedures" were not followed when an undercover officer and a

cooperating witness were conducting drug transactions. Br. in Supp. at 9-13; *see*

*also, e.g.*, 1 Trial Tr. (Doc. 94) at 184:2-185:10.  Any such alleged deviation from

"standard operating procedure" is not a legal basis for challenging the admission of

testimony.  The jury heard the evidence and considered what was and was not

adequately proved.

Defense counsel's strategy was to show that Heather Schutz had multiple

sources for the drugs she sold and that the evidence was not sufficient to find

beyond reasonable doubt that Johnson was among her sources. *E.g.*, 1 Trial Tr. at

100:6-10, 103:4-11, 105:4-18, 107:2-12108:4-110:8.  Nothing was unreasonable

about that strategy. Questioning the reliability of the cooperating witness who

14

claimed to purchase drugs from Schutz, as Johnson now claims counsel should have done, did not advance that strategy. It may, in fact, have undermined the strategy by making it appear as though he sought to shift blame to any available alternative culprit, however weak the supporting evidence might be. Neither prong of the *Strickland* test is met as to either trial or appellate counsel. This claim is denied.

### 3. Chain of Custody

Johnson contends the chain of custody was not adequately established and that exhibits consisting of cocaine should not have been admitted into evidence. He contends that the "best example" of a defect in the chain of custody was shown by the fact that Officer Chartier testified that Exhibit 600 weighed 7.4 grams, see 1 Trial Tr. at 189:9-191:25, whereas a DEA chemist testified that it weighed 6.3 grams, 3 Trial Tr. (Doc. 96) at 552:13-20.

Exhibit 600 was the crack seized on April 22, 2005, in connection with Count 6. Johnson was acquitted on Count 6. The only discrepancy he identifies, therefore, did not prejudice him. Nor does a single discrepancy in weight reasonably "give[] rise to a concern about the authenticity of any drug evidence admitted in this prosecution." Br. in Supp. at 15 (emphasis by Johnson). It is at least equally possible that a mistake was made in weighing the drug or in recording its weight. It was not unreasonable for counsel to decline to pursue the remote,

15

speculative possibility that all the drug evidence was tainted by malfeasance.
Appellate counsel had no basis for asserting malfeasance. Neither prong of the
*Strickland* test is met as to either trial or appellate counsel. This claim is denied.

### 4. Plea Options

#### a. Arraignment

Johnson contends that Assistant Federal Defender David Merchant, who
appeared as counsel at arraignment, had a conflict of interest because he
represented Heather Schutz. Br. in Supp. at 29-32. Merchant informed Magistrate
Judge Ostby of this conflict when he appeared with and on behalf of Johnson in
order that another attorney would be appointed in his stead. Other counsel
appeared for Johnson three days later. This claim is denied as frivolous.

#### b. Advice as to Maximum Penalty

Johnson contends that trial counsel consistently told him that the "maximum
sentence he could receive" was 20 years. He claims counsel did not explain "the
possible enhancements he faced at sentencing if he were to lose at trial" or that he
could plead guilty without debriefing or cooperating with the United States. Br. in
Supp. at 18-20. In response, the United States points to the caption of the
Indictment, which clearly advised Johnson that the highest available penalty on
some of the drug charges was life in prison, plus a five-year consecutive sentence
on the firearm charge. Answer at 13; Indictment (Doc. 1) at 1-2.

16

To prevail on this claim, Johnson must allege facts sufficient to support an inference that counsel's advice about his options was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision" about pleading guilty versus going to trial. *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)). The question thus is whether counsel could reasonably have advised Johnson that he stood a reasonable chance at trial and whether counsel's forecast of the likely range of possible sentences in the event of conviction was reasonably accurate. *E.g.*, *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985); *Strickland*, 466 U.S. 687-88; *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

Counsel's advice, as described by Johnson, was within the wide range of reasonable professional assistance. First, Johnson did stand a chance at trial. He had a workable defense that Schutz was responsible for the drugs. The prosecution's case was built on the testimony of persons who had already been convicted and who stood to benefit from testifying against Johnson. A reasonable juror could have found one or more witnesses unworthy of belief. Johnson was acquitted on three counts. Even in his § 2255 motion, Johnson continues to assert that the United States did not adequately prove its case at trial – a compelling indication that he intended to put the prosecution to its burden of proof. Johnson, likewise, fails to reply to the United States' assertion that "Johnson does not even

17

take the minimal step of unequivocally stating in his memorandum that he would have pleaded guilty in this case had he been informed differently by his counsel." Answer at 18; *see also* Reply, *passim.* Nothing in Johnson's motion, brief, or reply suggests he might have chosen to enter an open plea of guilty to all counts. There is no legal basis for an evidentiary hearing. *United States v. Rodrigues,* 347 F.3d 818, 824 (9th Cir. 2003) (following *United States v. McMullen,* 98 F.3d 1155, 1159 (9th Cir. 1996)).

Although Johnson states that counsel did not tell him he "could possibly receive the 35 year sentence that was imposed," Br. in Supp. at 19, that sentence did not stand, albeit for reasons counsel reportedly did not accurately foresee. The ultimately-imposed sentence was 235 months on the drug counts – five months less than the maximum sentence counsel allegedly told Johnson was possible. Although Johnson says counsel "in no way fore[saw] the jury convicting him on the firearm charge," that statement goes to whether it was reasonable for counsel to advise Johnson that the evidence on that charge was relatively weak. The caption of the Indictment plainly told Johnson that he could be sentenced to a consecutive 5-year term if convicted on Count 8.

Even if counsel told Johnson the maximum penalty was 20 years on the drug counts and he was unlikely to be convicted on the gun charge, those facts, under the circumstances here, do not make Johnson's decision to stand trial unintelligent

or involuntary. The prejudice prong of the *Strickland* test is not met. This claim is denied.

### 6. Appeal

#### a. Friendship with Trial Counsel

Johnson asserts that appellate counsel Ness failed to raise issues of ineffective assistance of trial counsel on direct review due to his friendship with trial counsel. Br. in Supp. at 21. A claim of ineffective assistance of trial counsel cannot be defaulted by failing to present it on direct review, *see Massaro*, 538 U.S. at 509. None of Johnson's claims of ineffective assistance of trial counsel were so obvious as to warrant immediate acquittal or new trial, Johnson was not prejudiced. This claim is denied.

#### b. Conflict of Interest

Johnson also asserts that appellate counsel Ness had a conflict of interest because he previously represented one of the most important prosecution witnesses, Heather Schutz. He claims that counsel had an interest in avoiding a remand for new trial, because Schutz would again have to testify and would likely face "more intense cross-examination," thus diminishing her chance at obtaining a sentence reduction. Br. in Supp. at 21-22.

Neither the record of the case nor Johnson's submissions reveal any realistic basis on which appellate counsel could have obtained a remand for a new trial.

There is no indication that Ness's alleged conflict of interest "affected counsel's performance," as opposed to showing "a mere theoretical division of loyalties." The claimed conflict did not affect the adequacy of Johnson's representation on appeal. *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). This claim is denied.

### c. *Apprendi* Issues

Johnson avers that appellate counsel should have raised *Apprendi* issues regarding sentence. Br. in Supp. at 22-25. He relies on *Cunningham v. California*, 549 U.S. 270 (2007). Neither *Cunningham* nor the argument has application here.[5]

There were no appealable issues under either *Apprendi v. New Jersey*, 530 U.S. 466 (2000), or *Alleyne v. United States*, __ U.S. __, 133 S. Ct. 2151 (2013). *Apprendi* and *Alleyne* together hold that the Sixth Amendment requires the United States to prove to a jury, beyond reasonable doubt, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum," as well as "facts that increase mandatory minimum sentences." *Apprendi*, 530 U.S. at 490; *Alleyne*, 133 S. Ct. at 2163. As to Counts 1, 2, and 3 against Johnson, the jury found him

---

[5] *Cunningham* addressed California's "determinate sentencing law." The Court explained its holding as follows:

> California's Legislature has adopted sentencing triads, three fixed sentences with no ranges between them. Cunningham's sentencing judge had no discretion to select a sentence within a range of 6 to 16 years, but had to impose 12 years, nothing less and nothing more, unless the judge found facts allowing a sentence of 6 or 16 years. Factfinding to elevate a sentence from 12 to 16 years, this Court's decisions make plain, falls within the province of the jury employing a beyond-a-reasonable-doubt standard, not the bailiwick of a judge determining where the preponderance of the evidence lies.

*Cunningham*, 549 U.S. at 273.

responsible, beyond a reasonable doubt, for 50 grams or more of cocaine base.[6] He was therefore subject to a ten-year mandatory minimum sentence and a maximum sentence of life in prison. *Compare* 21 U.S.C. § 841(b)(1)(A)(ii) *with id.* § 841(b)(1)(B)(ii), (C); *see also* Verdict (Doc. 50) at 2-4. Drug quantity and type were not at issue with respect to Count 7 and, accordingly, were not submitted to the jury. *See* 21 U.S.C. § 841(b)(1)(C); Verdict at 6.

No federal law required the United States to prove to the jury beyond reasonable doubt that Johnson was responsible for 1.55 kilograms of cocaine base or that he was a supervisor. *See Alleyne*, 133 S. Ct. at 2163 ("Our holding today does not mean that any fact that influences judicial discretion must be found by a jury."); *United States v. Toliver*, 351 F.3d 423, 430-31 (9th Cir. 2003), *abrogated on other grounds by Blakely v. Washington*, 542 U.S. 296 (2004); *see also, e.g., United States v. Akins*, 746 F.3d 590, 613 (5th Cir. 2014); *United States v. Valdez*, 739 F.3d 1052, 1054 (7th Cir. 2014); *United States v. Acosta-Colon*, 741 F.3d 179, 192 (1st Cir. 2013); *United States v. Johnson*, 732 F.3d 577, 584 (6th Cir. 2013). This claim is denied.

---

[6] After Johnson's re-sentencing, the United States Supreme Court held that "cocaine base" includes but is not limited to crack cocaine. *DePierre v. United States*, __ U.S. __, 131 S. Ct. 2225, 227-28 (2011). In doing so, it abrogated the Ninth Circuit rule applied in Johnson's case. *See Johnson*, 319 Fed. Appx. at 585 & n.1 (citing *United States v. Hollis*, 490 F.3d 1149, 1155 (9th Cir. 2007) (holding that "cocaine base" is too broad a term and prosecution must allege and prove the substance was crack cocaine)). The Ninth Circuit held there was *Hollis* error in Johnson's case, but it was harmless; the holding of *DePierre* means there was no error at all. *United States v. Sykes*, 658 F.3d 1140, 1144 n.6 (9th Cir. 2011)).

### 7. Re-Sentencing

Johnson claims that counsel Vern Woodward was ineffective because he did

not raise any *Pepper* or *Alleyne* issues at re-sentencing. *Pepper v. United States*, __

U.S. __, 131 S. Ct. 1229, 1241 (2011), holds that new evidence of post-sentencing

rehabilitation may be considered at a re-sentencing.  Johnson describes no

evidence that could show he was rehabilitated after sentencing.  There were no

*Alleyne* issues in the case. This claim is denied.

### 8. Motion Under Fair Sentencing Act

Johnson claims that counsel Michael Donahoe was ineffective in connection

with review of his sentence under the Fair Sentencing Act and 18 U.S.C. §

3582(c)(2) because he failed to obtain a 180-month sentence on the drug counts

and because he failed to allege a violation of the Equal Protection Clause. Br. in

Supp. at 34-36.  Neither has merit.

### a. Rehabilitation and 180-Month Sentence

On November 1, 2011, when Johnson filed his motion under § 3582(c)(2)

*pro se*, he asked that his "goal" of rehabilitating himself be taken into account. *Pro*

*Se* Mot. (Doc. 135) at 7. When counsel was appointed, he incorporated Johnson's

*pro se* motion. Mot. for Reduction (Doc. 140) at 2, 4. Counsel requested a sentence

at the low end of the new guideline range, 188 months. Senior United States

District Judge Charles C. Lovell re-sentenced Johnson to 235 months on the drug

counts, the high end of the new advisory guideline range.

Johnson appealed, arguing that the reasons for the new sentence were not adequately explained and post-sentencing rehabilitation – which Johnson's motion had described as a "goal," not a completed task – was not considered. The Court of Appeals affirmed the sentence, holding that the sentencing judge's explanation was adequate and there was, therefore, no need to remand the case. Mem. at 2, *Johnson*, No. 12-30071 (9th Cir. Sept. 24, 2012) (Doc. 157).

Johnson does not describe any evidence of his accomplished rehabilitation, or any evidence that Donahoe failed to present. There is no reason to think Johnson received a 235-month sentence, rather than 180 months, due to any error or omission by counsel. Neither prong of the *Strickland* test is met. This claim is denied.

## b. Equal Protection

Johnson also claims his sentence should have been more comparable to that imposed on another conspirator, Steve Berg. Br. in Supp. at 35-36. However, there was no real comparison between Berg and Johnson. As Johnson's counsel commented at sentencing, Berg was originally charged with participating in a conspiracy responsible for 11 pounds of cocaine, but the prosecution reduced Berg's charges. Sentencing Tr. (Doc. 90) at 34:16-25; *compare* Indictment (Doc. 1) at 2-3, *United States v. Berg*, No. CR 06-16-BLG-RFC-10 (D. Mont. filed Jan.

19, 2006), *with* Judgment at 1 (Doc. 388), *Berg*, No. CR 06-16-BLG (D. Mont.

filed Mar. 2, 2007). United States District Judge Richard F. Cebull, who sentenced

Berg, had prepared for Johnson's sentencing and read a letter memorandum

submitted by defense counsel.[7] Sentencing Tr. (Doc. 98) at 6:11-13. Judge Cebull

pointed out, among other things, that Berg was not convicted of dealing in a

mandatory-minimum drug amount: "He was convicted of about 4.8 grams of

powder, total." Sentencing Tr. (Doc. 98) at 6:17-19. In fact, it was half that

amount. Berg Presentence Report ¶ 21; Minutes (Doc. 386), *Berg*, No. CR 06-16-

BLG (D. Mont. Feb. 28, 2007). Berg also "cooperated extensively." Sentencing Tr.

(Doc. 98) at 6:21; *see also* Ex Parte Mot. (Doc. 385), *Berg*, No. CR 06-16-BLG

(D. Mont. Feb. 28, 2007).

These factors, by statute and by guideline, all non-racial, made a

significantly lesser sentence highly probable. It is rational to impose relatively

lesser sentences on persons who accept responsibility by pleading guilty, who are

accountable for a lesser quantity of drugs, and who cooperate with authorities. It is

also rational to impose relatively greater sentences on those who do not accept

responsibility, who are accountable for a greater quantity of drugs, and who do not

---

[7] Judge Cebull convened a hearing to sentence Johnson, but Johnson wanted to be sentenced by Judge Shanstrom, who had presided over trial. Consequently, Judge Cebull continued the hearing, and Johnson was sentenced by Judge Shanstrom. *See* Minutes (Docs. 72, 73); Sentencing Tr. [JDS] (Doc. 90) at 1 (Judge Shanstrom presiding); Sentencing Tr. (Doc. 98) at 1, 3:24-6:3 (Judge Cebull presiding). Johnson was sentenced twice by Judge Shanstrom and once by Judge Lovell but never by Judge Cebull.

cooperate in the identification or prosecution of other criminals. *E.g.*, *Brooks v. Ashcroft*, 283 F.3d 1268, 1274 (11th Cir. 2002), *superseded on other grounds*, *United States v. Rosales-Bruno*, 676 F.3d 1017, 1021 n.1 (11th Cir. 2012), *and by statute on other grounds*, *Ferguson v. Att'y Gen.*, 563 F.3d 1254, 1259 (11th Cir. 2009). There was no equal protection violation. This claim is denied.

**ORDERED:**

1. Except the claim relating to *Brady* and *Giglio* material concerning witnesses Schutz, Grimm, and Jackson, all of Johnson's claims are DENIED for lack of merit.

2. On or before **June 13, 2014,** the United States shall expand the record by filing and by serving on Johnson:

   a.    any information or evidence regarding prior cooperation and/or benefit received by Schutz, by Jackson, or by Grimm that was or is in its possession or that was in the knowledge and access of the prosecution;

   b.    evidence showing when this information, if any, came into in its possession; and

   c.    evidence showing when it was produced, if at all.

3. Johnson may respond to the United States' submissions on or before **July 7, 2014.**

4. Johnson's motion for the appointment of counsel (Doc. 167) is DENIED.

Appointment will be considered if further proceedings are required after the Court

has assessed the United States' and Johnson's responses to this Order.

DATED this 22nd day of May, 2014.

Sam E. Haddon
United States District Court