MICHAEL S. LAHR
Assistant U.S. Attorney
U.S. Attorney's Office
901 Front Street, Suite 1100
Helena, MT 59262
Phone: (406) 457-5120
FAX: (406) 457-5130
Email:   michael.lahr@usdoj.gov

ATTORNEY FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 06-79-BLG-DLC |
| Plaintiff/Respondent, | |
| vs. | GOVERNMENT'S RESPONSE TO ORDER TO SHOW CAUSE |
| LASHAWN JERMAIN JOHNSON, | |
| Defendant/Movant. | |

## INTRODUCTION

The United States of America, represented by Michael S. Lahr, Assistant

United States Attorney, hereby submits its response to the Court's Order to show

cause dated December 1, 2014.   In providing this response, the government

concedes that the prosecutor during the 2006 trial in this case-a former Assistant United States Attorney-failed to disclose favorable and material impeachment evidence to Johnson. Thus, Johnson's motion under 28 U.S.C. § 2255 should be granted, his convictions set aside, and a new trial ordered in this case.[1]

## LEGAL ANALYSIS

Under *Brady v. Maryland,* 373 U.S. 83 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Evidence is considered favorable if it is either exculpatory or if it can be used to impeach the credibility of a prosecution witness. *Giglio v. United States*, 405 U.S. 150, 154 (1972). Suppression of *Giglio* material occurs when such favorable evidence "known to the police or the prosecutor is not disclosed, whether willfully or inadvertently." *United States v. Lopez,* 577 F.3d 1053, 1059 (9th Cir. 2009).

Even if favorable evidence is suppressed, a new trial is not warranted unless the undisclosed evidence is material. It has been held that "implicit in the requirement of materiality is a concern that the suppressed evidence might have

---

[1] The Court has stayed its decision on a motion by Johnson to reduce his sentence under Amendment 782 to the United States Sentencing Guidelines. In the event the Court grants Johnson's § 2255 motion the government requests that the Court deny the motion for reduction of sentence as being moot.

affected the outcome of the trial." *United States v. Agurs,* 427 U.S. 97, 104 (1976). Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682 (1985).

The question, however, "is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley,* 514 U.S. 419, 434 (1995). Further, a *Brady* violation is not established merely by "demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435.

In this case, information concerning a 5K motion filed on behalf of a key government witness, Heather Schutz, was not disclosed to the defense. The defense did not know that such a motion had been filed or that Schutz's sentence had already been reduced based on that motion. Such evidence was both favorable and suppressed by the prosecution. The question, then, is whether it was material under the circumstances of this case. The United States acknowledges that is was.

In *Lopez,* the court was easily able to determine that the impeachment evidence at issue there was not material because the witness testimony "did not

directly inculpate Lopez." *Lopez,* 577 F.3d at 1067.   Further, because there was such strong evidence of guilt independent of the witness's testimony, the court concluded there was not a reasonable likelihood that the introduction of the impeachment evidence would have altered the outcome. *Id.*   Under the analysis provided by *Lopez,* the importance of a witness to the government's case is a critical factor in determining the materiality of the impeachment evidence.

Unlike the situation presented in *Lopez*, Heather Schutz was a key witness in the prosecution against Johnson.   She was regarded as the biggest dealer of cocaine in Billings.   She had a long personal relationship with Johnson and identified him as her source of supply throughout the period of time she was dealing cocaine.   Schutz testified that she was involved in every transaction with Johnson, that she distributed all the cocaine that Johnson provided and that she gave him the proceeds from the sale of the cocaine.

That Schutz was a major cocaine dealer in Billings was readily supported by the testimony of other witnesses who testified that Heather was their supplier. Additionally, there was much corroboration between Leslie Caldwell and Schutz regarding trips to California to collect cocaine to bring back to Montana.

But Heather Schutz told two tales over the course of her involvement with law enforcement following her arrest.   She initially stated during her debriefs that Johnson was not involved in her cocaine distribution and was not her source of

supply.  Instead, she named another individual as her supplier.  This change in Schutz's story was brought to jury's attention through her cross-examination.

The jury, then, was left in the classic position of deciding whether Schutz was telling the truth at trial or had told the truth in her initial debriefs.  If the jury had cause to doubt Schutz's testimony at trial and decided her original story was true, it would have undermined the entire case against Johnson because such doubt would necessarily have impacted the jury's consideration of the corroborative testimony as well.

Because her story changed, Schutz's credibility was of significant importance.  Therefore, evidence that she had already received a significant reduction in her sentence was evidence the jury should have heard to allow it to determine whether she was being truthful when she debriefed or when testifying at trial.  Such impeachment evidence was material as it could have "put the whole case in such a different light as to undermine confidence in the verdict." *Kyles,* 514 U.S. at 434.

The question as to whether the jury had the necessary evidence to judge Schutz's credibility is, of course, further complicated due to Schutz's testimony regarding her expectation of favorable treatment from the government.  As this Court noted in its Order, "Schutz's receipt of personal benefit in exchange for her information and testimony was not bare hope, as the terms of her plea agreement

suggested, and was not mere potential, as the prosecutor's questions and Schutz's answers at trial suggested. It was concrete and quantified reality. The prosecutor's concealment of these facts fell short of the level of candor required of prosecutors." (Order of December 1, 2014, p. 5).

A prosecutor "violates a criminal defendant's right to due process of law when, although not soliciting false evidence, it allows false evidence to go uncorrected." *Alcorta v. Texas,* 355 U.S. 28, 29-30 (1957). In *Alcorta,* the court determined that the defendant's due process rights had been violated when a prosecutor knowingly allowed a witness to create a false impression through her testimony. *Id.* To establish that this type of violation has occurred, it must be shown that the testimony was actually false, that the prosecutor knew or should have known it was false, and that the false testimony was material. In this context, materiality is established if there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Hayes v. Brown,* 399 F.3d 972, 984 (9th Cir. 2005).

The fact that the false evidence presented only goes to credibility "does not change the materiality calculus." *Id.* at 986. A jury's "estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as a possible interest of the witness in testifying

falsely that the defendant's life or liberty may depend." *Id.* (quoting *Napue v. Illinois,* 360 U.S. 264, 269 (1959).

In *Hayes,* the court determined that the prosecution had "achieved the desired effect of artificially bolstering [the witness's] credibility" through its actions and that the "jury was not permitted to assess whether [the witness] had an expectation of favorable treatment that could have affected his testimony." *Hayes,* at 987. Here, based on her testimony during direct examination, the jury was left with the false impression that Heather Schutz had no particular expectation of favorable treatment, an impression which was not corrected by the prosecutor.

The bottom line in this case is that the jury never heard about the 5K motion or the fact that Heather Schutz had been granted a reduction in her sentence. Because of the questions asked of her and her response, the jury was led to believe that she had no expectation of receiving favorable treatment other than what was included in the terms of her plea agreement. In the jury's eyes, this would have placed her in the same position as any other government witness, testifying with only a vague hope for a sentence reduction. The problem, however, is that Heather Schutz was not just any witness. She was the centerpiece of the government's case and, in fact, had already received a significant benefit by virtue of naming Johnson as her supplier. Additionally, based on these circumstances, she most likely believed she would be further rewarded for her testimony at trial. Because the jury was never

informed of any of this, it was not permitted to assess whether she had an expectation of favorable treatment that could have affected her testimony. Because the government's case would have been undermined if the jury had chosen not to believe Schutz, the uncorrected false testimony regarding her lack of expectation of benefit was material.

In sum, both the failure to turn over impeachment evidence and the failure to correct false testimony led to the same result. Both failures prevented the jury from hearing evidence critical to a credibility determination regarding a key prosecution witness. As such, the materiality is acknowledged and the verdicts on the drug trafficking crimes should be set aside.

If the drug convictions are set aside, the conviction on the § 924(c) count should also be set aside as a consequence of the *Giglio* violation concerning Schutz. In order to establish the commission of the 924(c) charge the government had to prove Johnson possessed a firearm in furtherance of a drug trafficking offense. As explained above, Schutz' testimony was material to proving that Johnson committed the very drug trafficking offenses underlying the 924(c) charge in this case. The *Giglio* violation thus was material not only to the underlying drug trafficking offenses, but the 924(c) violation that transpired in furtherance of that drug trafficking crime as well. For that reason, Johnson's conviction for the 924(c) conviction should also be set aside.

## **CONCLUSION**

Johnson's motion should be granted, his convictions set aside, and a new trial ordered.

DATED this 9th day of January, 2015.

>MICHAEL W. COTTER
>United States Attorney
>
>/s/ *Michael S. Lahr*
>Assistant U.S. Attorney
>Attorney for Plaintiff/Respondent

REVIEWED AND APPROVED:

/s/ *Michael W. Cotter*
U.S. Attorney
Attorney for Plaintiff/Respondent

CERTIFICATE OF COMPLIANCE

Pursuant to L.R. CR 47.2(c) the word count of the attached brief contains 1,715 words, excluding caption, and certificates of service and compliance.

/s/ *Michael S. Lahr*
Assistant U.S. Attorney
Attorney for Plaintiff/Respondent

CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2015, a copy of the foregoing document was served on the following persons by the following means:

    __1,2__        CM-ECF
  _____      Hand Delivery
  _____      Mail
  _____      Overnight Delivery Service
  _____      Fax
  _____      E-Mail

1.     Clerk, United States District Court

2.     Colin Stephens, Counsel for Johnson


        /s/ *Michael S. Lahr*
        Assistant U.S. Attorney
        Attorney for Plaintiff/Respondent